## Mattingly v. Commonwealth.

(Decided March 7, 1924.)

### Appeal from Daviess Circuit Court.

1. Criminal Law—Court Must Instruct as to Whole Law of Case on Request.—Where the accused so requests it is the duty of the court to instruct as to the whole law of the case. Criminal Law, 16 C. J., section 2354, p. 963.

2.  Criminal Law—Conviction Cannot Rest on Evidence Obtained by
    Unlawful Search.—A conviction could not rest on evidence of
    prohibition officers obtained by a search of defendant's premises
    without a search warrant or consent of some one possessing the
    right to give it.

3.  Criminal Law—Whether Search of Premises Made with Permis-
    sion Held Question that Should Have Been Submitted to Jury.—
    In a prosecution for violation of the prohibition law, where the
    only evidence that would support a conviction was that obtained
    by a search of defendant's premises without a search warrant,
    and the evidence was in conflict as to whether defendant gave per-
    mission to make the search, the court committed reversible error
    in refusing to submit to the jury the question of fact whether or
    not search was made with defendant's permission.

SLACK, BIRKHEAD & SLACK and CLEMENTS & CLEMENTS
for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K.
BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE ROBINSON—Revers-
ing.

In August, 1923, two prohibition officers, accom-
panied by a United States deputy marshall and a con-
stable, went to a farm owned by Nace Mattingly on the
Curdsville road about 12 miles from Owensboro, where
it seems they had learned in some manner or suspected
that a moonshine still was in operation. Mattingly did
not operate the farm, having rented it to one Ellis Bal-
lard who lived in the house with his wife and several
children. Mattingly, however, before renting the place
had reserved one room as well as a part of an old smoke
house in which he, in connection with Ballard, the tenant,
stored articles for which they had no use. Mattingly
was married and during a part of the time lived in the
room that he had reserved with his wife and a small son,
but during the summer occupied a tent that he had
erected in the yard.

When the officers reached the farm they proceeded
to the house, and were told by Mrs. Ballard that Mr.
Mattingly was absent at Curdsville a short distance
away, but she expected him to return during the after-
noon, and that Mr. Ballard was at work in the field near
by.

The testimony relative to what immediately transpired differs materially, but in the evidence of Mrs. Ballard she claims that one Walter Kimmel, one of the prohibition officers, stated that they had come there to search the place, whereupon she asked him if he had a search warrant and he replied in the negative, adding, "I do not need one; I am a prohibition officer," whereupon she again informed him that her husband was back in the fields and it would be well to go over and see him. However, utterly disregarding this advice, the officers went to the smoke house and made a careful search. In this she is corroborated by her husband, who says that upon coming home later he was informed by the officers that this search had been made, and further by the testimony of Mattingly that after he returned he was confronted by the officers who had made a thorough search of the premises; but, nevertheless, they asked him if they might search them pending the arrival of a search warrant for which they had sent to Owensboro.

The version of the affair given by the officers is somewhat hazy and not entirely satisfactory, and they do not corroborate each other in many essential points. They say that after reaching the farm and learning that Mr. Mattingly was absent, they walked around and when near the smoke house detected the odor of intoxicating liquors, whereupon they immediately dispatched one of their number, Hardin Brown, to Owensboro twelve miles away in quest of a search warrant, which was obtained from Magistrate Hite, but during the absence of Brown, Mattingly returned and when told of the expected search warrant consented to a search being made, during which they found certain paraphernalia that could be, or might have been, used for the manufacture of moonshine whiskey, but as testified by Kimmel, they did not discover a complete still and upon further investigation they discovered in the henhouse four pint bottles that contained a reddish fluid that they pronounced moonshine whiskey; and as each bottle had only a small amount, they poured all into one, which was used as evidence. They did not claim to have found any mash or other ingredients commonly used for the manufacture of moonshine whiskey, but among the articles in the smoke house were a number of corks and several barrels, which were whitewashed on the inside and no odor or trace of whiskey was shown.

When Brown returned from Owensboro with the paper, Mattingly said it was read to him and he was told it was a search warrant. However, it is rather a significant fact that during three trials of the case this search warrant, if such it was, failed utterly to be shown or tendered in evidence; and though Mattingly was twice tried before Magistrate Hite in Owensboro, a hung jury was the result, and before further action could be taken an indictment was returned by the grand jury, and upon his trial in the circuit court he was fined $250.00 and given sixty days in jail. His motion for a new trial being overruled, counsel for appellant prosecutes this appeal, setting out seven grounds upon which he relies for a reversal:

First. Because the court erred in overruling his demurrer to the indictment.

Second. Because the court erred in admitting incompetent and irrelevant evidence.

Third. Because the court erred in refusing competent and relevant evidence.

Fourth. Because the court failed to instruct the jury peremptorily in favor of the defendant.

Fifth. Because the court erred in giving in structions one and two to the jury.

Sixth. Because the court erred in refusing to instruct the jury as to the whole law of the case.

Seventh. Because the verdict of the jury is not sustanied by the evidence and is contrary to the law.

In reviewing these grounds, the court does not deem it necessary to pass upon all, or express an opinion as to their merit or lack of merit, when this case must of necessity be reversed owing to the failure of the court to instruct as to the whole law of the case, which it was requested to do by attorney for appellant, and whose objections were not noted at the time.

Instructions one and two as given by the court were entirely proper, but considering all the evidence, utterly fail to give the whole law; and referring again to the testimony we may say it is conclusively shown that a strong conflict exists as to whether this search was made before the arrival of the alleged search warrant or even before the return of Mattingly to his home, or whether

it was made after Mattingly's return and as a result of his alleged permission to go in and upon the premises.

It is elementary that under no state of circumstances could these officers have entered the grounds or premises of appellant and have made a search without some color of authority; and they must have had a search warrant or have been accorded this privilege to make the search by some one possessing unquestioned right. That such permission was given is denied by appellant, by Ellis Ballard and Mrs. Ballard, and in view of the contradictory testimony of some of the officers relative to this question, we are firmly of the opinion that the court seriously erred in not giving the jury the third instruction as requested. And after appellant had denied having given this permission to make this search, which two other witnesses allege was done in his absence, and as a conviction could not have been had without such permission, it became a question of fact for the determination of the jury under separate instructions, as the appellant was entitled to have submitted to them the question of fact as to whether or not the search was made with his permission, and it is clearly to be seen if it was done under any other circumstances, then no conviction could have been secured, and the jury should have returned a verdict of not guilty. This question is fully discussed by the court in the case of Smith v. Commonwealth, 197 Ky. 195, wherein, speaking of a third instruction given in a case somewhat similar to this, the court said:

"This instruction was eminently proper, for without a search warrant, the absence of which was admitted in this case, Hunt, the deputy sheriff, could not legally have made the search in question, except with the appellant's consent, and without such consent all evidence as to the search and the discovery and seizure of the whisky resulting therefrom, would have been incompetent and inadmissible."

The judgment is reversed and cause remanded for proceedings consistent herewith.